ELIZABETH WHEELER *et al.*

*v.*

ELIZABETH WHEELER, Exrx. *et al.*

*Filed at Ottawa October 31, 1890.*

1. CONTEST OF WILLS—*limitation as to time of filing the bill—jurisdictional.* The power of a court of equity to set aside the probate of a will is purely statutory, and the jurisdiction can only be exercised in the mode and under the limitations prescribed by the statute. The

time limited for the filing of a bill to contest a will is jurisdictional, and if the jurisdictional facts are not alleged, a demurrer will lie.

2. SAME—*saving clause—as to time of filing bill—in respect of "persons absent from the State"—the statute construed.* The saving clause in section 7 of the Statute of Wills, relating to the limitation of the time for contesting wills by bill in chancery, in favor of infants, *femes covert* and persons insane, applies equally to such persons, whether residents or non-residents of this State; but the provision "saving to persons absent from the State," applies to those only who are subject to the jurisdiction of the State, and have gone out of that jurisdiction for temporary purposes. It does not apply to persons who have never been residents of the State.

3. SAME—*former decision.* The decision in *White* v. *Hight,* 1 Scam. 204, extending the saving clause to non-residents, is no longer the rule in this State.

4. CONSTRUCTION OF STATUTES—*how far controlled by State policy.* While the policy of the State indicated by a series of legislation is not of controlling weight in the construction of statutes, it is a matter that may be properly considered in determining the legislative intention in employing words susceptible of two meanings. Other things being equal, that construction will be adopted which comports with such State policy.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. MASON B. LOOMIS, for the appellants:

A saving in a statute in favor of persons absent from the State applies as well to non-residents as to residents. *White* v. *Hight,* 1 Scam. 204; *Paine* v. *Drew,* 44 N. H. 317; *Hall* v. *Little,* 14 Mass. 203; *Dwight* v. *Clark,* 7 id. 514; *Wilson* v. *Appleton,* 17 id. 180; *Von Hemert* v. *Porter,* 11 Metc. 210; *Burger* v. *Roche,* 11 Pick. 36; *Strithorst* v. *Græme,* 3 Wils. 145; *Lebeux* v. *Berkeley,* 5 A. & E. 836; *Williams* v. *Jones,* 13 East, 439; *Lafonde* v. *Ruddock,* 24 E. L. & E. 239; *Duplien* v. *De Roven,* 2 Vt. 450.

The words "absent from the State," in a statute, are not confined in their application to those who have once been inhabitants, but are equally applicable to those who have never

before been in the State,—to foreigners as well as citizens.
It has been so decided in this State in the case of *White* v.
*Hight,* `supra`. It has been so decided in Massachusetts, not.
only in the cases hereinbefore cited, but also in *Whitney* v.
*Goddard,* 20 Pick. 310; *Brigham* v. *Biglow,* 12 Metc. 270;
*Putnam* v. *Dyke,* 13 Gray, 538. Also in New York, in *Ruggles*
v. *Keeler,* 3 Johns. 263; *Cole* v. *Jessup,* 2 Barb. 309; *Car-
penter* v. *Wells,* 21 id. 593; *Fowler* v. *Hunt,* 10 Johns. 465;
*Ford* v. *Babcock,* 2 Sandf. 518. So in Vermont, in *Dunning*
v. *Chamberlain,* 6 Vt. 127; *Russ* v. *Fay,* 12 id. 240; *Graves* v.
*Weeks,* 19 id. 178; *Hall* v. *Railroad Co.* 28 id. 401; *Davis* v.
*Marshall,* 37 id. 69. And in Connecticut, in *Hatch* v. *Spof-
ford,* 24 Conn. 432. And in Maine, in *McMillan* v. *Wood,* 29
Me. 217, and *Tribodeau* v. *Levasseur,* 36 id. 362. And in New
Hampshire, in *Sissons* v. *Bicknell,* 6 N. H. 557; *Paine* v. *Drew,*
44 id. 306; *Howard* v. *Fletcher,* 59 id. 151. And in Rhode
Island, in *Crocker* v. *Arey,* 3 R. I. 178. And in Missouri, in
*King* v. *Lane,* 7 Mo. 241; *Sheve* v. *Whittlesy,* id. 473; *Bedford*
v. *Bradford,* 8 id. 233. And in Ohio, in *North* v. *Wilson,*
Wright, 152. And in Indiana, in *Wood* v. *Bissell,* 108 Ind.
229. And in Minnesota, in *Jordan* v. *Secombe,* 33 Minn. 220.
And in Alabama, in *State Bank* v. *Seawell,* 18 Ala. 616, and
*Thompson* v. *Odum,* 23 id. 480. And in Arkansas, in *Wake-
field* v. *Smart,* 3 Eng. 488, and *Field* v. *Dickinson,* 3 Pike, 409.
And in Nevada, in *Robinson* v. *Mining Co.* 5 Nev. 44. See,
also, Angell on Limitations, secs. 204, 206, and notes.

Mr. M. J. DUNNE, for the appellees:

The words "absent from the State," in the statute, do not
apply to one never in the State. *Snoddy* v. *Cop,* 5 Tex. 106;
*Beardsly* v. *Southmayd,* 3 Green, 171; *Baber* v. *Brentwall,* 3
Harr. 262; *Hale* v. *Lawrence,* 1 Zabr. 714.

The saving or exception which takes the case from the oper-
ation of the statute must be clear, and nothing will be implied
in favor of exemption. *Weller* v. *Child,* 12 Allen, (Mass.) 333;

*Bucklin* v. *Ford,* 5 Barb. 393; *Warfield* v. *Fox,* 53 Pa. 382; *Favorite* v. *Booker,* 17 Ohio St. 548; *Dozier* v. *Ellis,* 28 Miss. 730.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is a bill in chancery, filed by appellants, under the seventh section of the Statute of Wills, (Rev. Stat. chap. 148,) to set aside the will of Thomas Wheeler, deceased, on the ground of mental incapacity of the decedent to make a will, and of the undue influence exercised upon him in procuring its execution. The bill was filed October 24, 1888, and the will was duly admitted to probate, as alleged in the bill, October 13, 1873, substantially fifteen years prior to the filing of the bill. The bill alleges that the complainants, and each of them, were, at the time of the death of said Wheeler, and ever since have been, non-residents of the State of Illinois, and have never resided in this State; that two of them have resided in Ireland and one in the State of Massachusetts, and that until immediately prior to the filing of their bill, they, nor either of them, had any knowledge that said decedent had made a will, or of the probate of an instrument purporting to be his will. A demurrer was filed to the bill, and sustained. The only question presented by the record is, whether the complainants, by their bill, bring themselves within the saving clause of the statute.

It is the established doctrine, that, independently of statutes authorizing it, courts of equity have not, under their general chancery powers, jurisdiction to entertain a bill to set aside a will or the probate thereof. (*Gaines* v. *Feuntes,* 92 U. S. 10; 2 Pomeroy's Eq. 913; *Gould* v. *Gould,* 3 Story, 546; *Holden* v. *Meadows,* 31 Wis. 284; *Webb* v. *Cleverden,* 2 Atk. 424.) We therefore held in *Luther* v. *Luther,* 122 Ill. 558, that as the jurisdiction of courts of equity, in this State, to entertain bills to set aside the probate of wills, is derived exclusively from the statute, such jurisdiction can only be exercised in the mode

and under the limitations therein prescribed, and that the time limited within which bills for that purpose might be brought was jurisdictional, and the bill must be exhibited within the period thus limited, or the court is without power to entertain the same. It follows that the allegations of the bill must be such as will warrant the court in proceeding, and if the jurisdictional facts are not alleged, a demurrer will properly be sustained.

The section of the statute under consideration, after providing for the proceedings upon the probate of the will, further provides: "That if any person interested shall, within three years after the probate of any such will, testament or codicil, * * * appear, and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not; * * * but if no such person shall appear within the time aforesaid, the probate as aforesaid shall be forever binding and conclusive on all the parties concerned, saving to infants, *femes covert, persons absent from the State or non compos mentis,* the like period after the removal of their respective disabilities," etc. As applicable here, the saving is "to persons absent from the State," and the question presented is, are the complainants "persons absent from the State," within the meaning of this statute.

We are aware that in England and in many of the States similar provisions in limitation laws have been construed to save the right of action to non-residents as well as to residents absent from the jurisdiction. Thus, in *Von Hemert* v. *Porter,* 11 Metc. 210, it was held, that where the saving was "to persons absent from the United States," it was applicable to foreigners who were never within the United States. So in *Hall* v. *Little,* 14 Mass. 203, and *Putnam* v. *Dyke,* 13 Gray, 538. In *Payne* v. *Drew,* 44 N. H. 306, the words "absent from," in the saving to the statute, is held to include all non-residents; and it was there said, that in the various States

where the question has been presented, except the States· of New Jersey and Texas, a like construction has been adopted. At a very early day the courts of England, in the construction of the limitation acts,.held the same rule. The concurrence of decision by courts of such eminent respectability ordinarily would be controlling, and be followed in construction of similar statutes, but we do not feel bound thereby in the decision of this cause.

This court, in *White* v. *Hight,* 1 Scam. 204, gave similar construction to the saving clause contained in the seventh section of the act of February 10, 1827, (Laws of 1827, p. 248,) which saved the right to bring suit, etc., to persons under the age of twenty-one years, insane, *feme covert,* or "beyond the limits of this State," provided said suit, etc., was brought within the period fixed by the act, after becoming of full age, sane, *feme sole,* or "coming within this State." The limitation having been pleaded, it was held that a replication that the plaintiff, when the cause of action accrued, was and ever since has been beyond the limits of the State, to-wit, in the State of Ohio, was a good answer to the plea, and it was there held that the saving clause included non-residents of the State as well as residents who might be temporarily without its limits. At the next session of the legislature after the promulgation of this decision, the legislature amended the act of 1827 so as to exclude non-residents from the operation of the saving clause, unless they were infants, insane or *feme covert,* and confining the saving, as to such persons, only until the disability of insanity, infancy or coverture should cease.

It is manifest that the construction contended for by appellees, if adopted, would have the effect of extending rights to foreigners and non-residents of the State that have not been conferred upon our own citizens. The most that could be rightfully claimed, under the constitution or as a matter of comity, would be that citizens of a sister State should be placed upon a footing with citizens of this State, and accorded equal

rights and immunities under our law, and we can not suppose that it was intended to give greater protection to non-residents than to residents of the State,—and the act should not be so construed unless we are compelled by the language of the legislature to attribute to them such an intention. This State has extended to non-residents the most liberal protection under its limitation laws. If the cause of action be barred by the laws of the State where it accrued, a plea of such foreign statute will be held good to bar recovery within this State. And so in respect of the enforcement, under our laws, of claims accruing elsewhere. If they are not barred by the law of the place where they accrued, or the domicile of the parties, they will not be barred under our law until the running of the statute within this State.

It will, however, be unnecessary to notice in detail the various acts bearing upon the general subject of the limitation of actions, but it may be said that since the passage of the act of 1837, before mentioned, now over a half century, through all the changes in the limitation laws and other acts affecting the assertion of private rights within this State, the legislative department of the government has uniformly adhered to the principles promulgated by that act. No act of the legislature has been called to our attention where a different policy has been indicated, or where, by any fair inference, it can be argued that non-residents are accorded privileges or exceptions not enjoyed by citizens of this State, unless it be the act in question.

In the eighth section of the Limitation statute, (chap. 83,) taken from the act of 1839, copied into the act of 1845, and literally therefrom in the revision of 1874, the saving is to those "out of the limits of the United States and in the employment of the United States or of this State." Section 9 of the same act saves rights to persons "absent from the United States in the service of the United States or of this State." By these sections a distinction between non-residents and per-

sons "out of" or "absent from" the State is clearly drawn, and it would seem clear that an intention was manifested not to follow the rule announced in *White* v. *Hight*, and other cases alluded to, but to exclude from the saving clause of the statute all persons who were not residents or not absent in the particular employment designated. So with the limitation of personal actions the saving is simply to minors, persons insane or in prison, and, formerly, to *femes covert.* So, again, in the Administration act, the saving is to *femes covert*, infants, persons of unsound mind, or imprisoned, or "without the United States in the employment of the United States or of this State." Other illustrations of the legislative policy might be given, such as the statute allowing the opening of decrees, etc., which have been rendered upon constructive notice, and many others; but sufficient has been shown to clearly indicate the policy of the State in this regard.

Again, the legislature, in a very marked manner, has established a policy to facilitate the speedy settlement of estates and the prompt distribution of funds to creditors and distributees. This has been repeatedly recognized by this court. Moreover, public policy demands that such construction to the law should be given, if practicable, and such rules of procedure established, as will most nearly effect a realization of the full value of the estate of decedents. In this respect the legislative policy is again strikingly manifest in the many provisions of law giving the court supervision of sales, requiring publication and notice, permitting sales on credit, requiring valuation, and like provisions.

Without pausing to discuss the effect of the rule contended for, it is clear, that while the purchaser at executors' sales or from devisees might be willing to purchase at the expiration of three years or before, if there was a reasonable certainty as to who might contest the will, yet if, after an indefinite period, bills of this character might be filed, no one would feel at liberty to purchase at the value of the premises, and no

34—134 ILL.

one could safely buy property the title to which depended upon the validity of a will, where there might be non-resident heirs, except at such diminished price as would enable him to bear the contingency of losing the land, or engaging in expensive litigation to maintain his title.

It is conceded that the policy thus indicated is not controlling, but is a matter proper to be considered in determining the legislative intention in employing the language of this section. It is familiar that if the words employed are susceptible of two meanings, that will be adopted which comports with the general public policy of the State as manifested by its legislation, rather than that which runs counter to such policy. The question at last to be determined is, what was the legislative intent? That must be gathered from the words used, and, ordinarily, where technical words are not employed, the language must be construed according to its popular acceptation. *Stuart* v. *Hamilton,* 66 Ill. 253; *Richmond* v. *Moore,* 107 id. 429; *Steere* v. *Brownell,* 124 id. 27.

The act provides, that if no one shall appear within the time limited, the probate of the will shall be forever binding and conclusive on all parties concerned and not falling within the saving clause. These provisions are correctly designated "statutes of repose," and are dictated by a wise public policy,—to put at rest title to property and prevent stale and vexatious litigation; and, being promotive of the public welfare, exceptions out of or savings from such statutes are to be strictly construed. The word "absent," when used as an adjective, is defined by Worcester literally as "not present." The first definition given by Webster is, "withdrawn from or not present in a place;" and by Anderson, (Dictionary of Law,) "being away; not present; not at one's domicile or usual place of business." The verb "absents" necessarily means to withdraw from or go away from a place.

It must be conceded that the definition as given by Worcester would seem to indicate that the word "absent," used as a

descriptive adjective, included all persons, whether resident or non-resident. The other standards quoted from, in their definition of the word, convey the idea that there is a withdrawing from, or that the party mentioned is not at the place where he might be expected to be,—and this is the sense in which the words "absent from Ireland" were construed by Lord Ellenborough, in *Buchanan* v. *Rucker*, 9 East, 194. The judgment there was attempted to be maintained on the ground that it was authorized by local laws of the island of Tobago, where rendered, in cases of "persons absent from the island," and it was said: "By 'persons absent from the island,' must necessarily be understood persons who have been present within the jurisdiction, so as to be subject to the process of the court; but it can never be applied to a person who, for aught that appears, never was present within or subject to the jurisdiction. 'Absent from the island' must be taken only to apply to persons who have been present there, and were subject to the jurisdiction of the court out of which the process issued." The same construction was given in *Stoney* v. *Cage*, 5 Texas, 106. It is true that the act there provided that the action might be brought "after his or their return," etc.; but the court holds that a correct definition of the word "absence" requires its application to those who had been within the jurisdiction of the court, and not to persons who had never been within the limits of the State. The definition of the adjective as given by Webster expresses our understanding of its common use and acceptation, and may properly be held to be the sense in which it is employed in the section quoted. It is true that this provision, without the alteration as it was passed in 1829, was carried into the revisions of 1833, 1845 and 1874; but, as we have seen, the whole spirit of legislation of the State in respect of the limitation of actions forbids the supposition that the legislature deliberately designed to keep open litigation, in respect of the property within the State, for an indefinite period, for the benefit of those residing without its

limits who are not subject to its laws and contributing nothing to the maintenance of its government, while denying the same right to its own citizens.

As we have seen, where two constructions can be given with equal facility, that must be adopted which comports with the public policy of the State; and while we recognize the rule as laid down elsewhere by the distinguished tribunals to which we have referred, we feel constrained, in view of the legislation of the State and the uniform construction thereto given by courts of the State, to adopt a contrary view, and to hold that the provision of the statute applies only to those who are residents of the State and absent therefrom. As a matter of course, the saving to infants, *femes covert* and persons insane, is general, and applies equally to those within and without the State; but the provision, "saving to persons absent from the State," must be construed as meaning those who are subject to its jurisdiction, but who have departed or gone without that jurisdiction for temporary purposes.

We are of opinion that the demurrer was properly sustained, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*