*In re* ESTATE OF ANTHONY J. SUTERA, Deceased (Joseph Sutera *et al.,* Petitioners-Appellants, v. Mary Ann Pulizzano *et al.,* Respondents-Appellees).

First District (3rd Division) No. 1—89—1559

Opinion filed May 23, 1990.

532

Melvin A. Brandt, of Chicago, for appellants.

Keith E. Morehead, of Morehead & Flynn, of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Petitioners, Joseph Sutera, Frank Sutera, Jennie Sutera Simone, Sandra Holtrop, Edward Holtrop, Jr., and Matthew Holtrop, are heirs at law of decedent, Anthony J. Sutera. They filed a petition on January 23, 1986, to contest decedent's will which appointed respondent Mary Ann Pulizzano as executrix and named respondents Debby and Darlene Pulizzano as residuary legatees. (Ill. Rev. Stat. 1985, ch. 110½, par. 8—1.) The petition was dismissed by the circuit court in November 1986. Following a successful appeal of the dismissal to this court (*In re Estate of Sutera* (1988), 166 Ill. App. 3d 1147 (unpublished order under Supreme Court Rule 23)), the matter was reinstated on November 28, 1988. Respondents subsequently moved to dismiss the reinstated petition, and their motion was granted January 24, 1989, by the circuit court with an allowance for petitioners to amend. On February 21, 1989, petitioners filed their amended petition which the trial court dismissed on May 23, 1989, without leave to amend, for failure to state a cause of action. Petitioners appeal the dismissal of their amended petition and contend that: (1) the amended petition alleged sufficient facts to state a cause of action for both undue influence and lack of testamentary capacity; and (2) even if the petition was insufficient, petitioners should be allowed leave to amend in the interests of justice.

The decedent's will bequeathed his entire estate to two nieces, Debby Pulizzano and Darlene Pulizzano, and appointed their mother, Mary Ann Pulizzano, a sister of the testator, as executrix. The will was admit-

ted to probate on November 15, 1985, and on January 23, 1986, petitioners, who are two brothers, a sister, a niece, three grandnephews and a grandniece of decedent, filed a petition to contest the will. Petitioners alleged that the will was the result of duress (count I) and undue influence (count II) exercised upon decedent by Mary Ann Pulizzano, and that decedent lacked the mental capacity to make a will at the time of the will's execution (count III).

On March 10, 1986, respondents filed a motion to strike and dismiss the petition arguing that it did not comply with the provisions of section 8—1 of the Probate Act, which requires a will contest petition to name all legatees and heirs, their addresses if known, and whether any of the parties are minors. (Ill. Rev. Stat. 1985, ch. 110½, par. 8—1.) On November 5, 1986, petitioners filed a late supplement to the petition containing the names of the eight petitioners and their addresses. Two weeks later, on November 20, 1986, the trial court dismissed the petition with prejudice pursuant to section 2—1301(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(d)).

On December 22, 1986, petitioners filed a motion to vacate this dismissal, arguing that respondents had previously failed to respond or appear for a noticed deposition and had not appeared in court in response to a notice of motion, and that their counsel had not failed to appear for the November 20, 1986, hearing, but had simply appeared late. The trial court, however, denied petitioners' motion to vacate, and petitioners appealed the dismissal.

On May 11, 1988, this court set aside the dismissal of the petition, finding that the record did not reveal that petitioners had failed to comply with court orders and that there was at least some lack of diligence by both parties. This court also stated that petitioners had demonstrated the existence of a meritorious claim only for purposes of section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e)). On November 28, 1988, petitioners' case was reinstated.

On December 19, 1988, respondents filed a second motion to dismiss, alleging generally that the petition failed to state a cause of action because it contained only conclusional allegations. On January 24, 1989, the trial court dismissed the petition, holding that it was substantially insufficient at law, but allowing petitioners 30 days to file an amended petition.

On February 21, 1989, petitioners filed an amended petition which stated:

> "Now comes the petitioners, heirs at law of the deceased Anthony J. Sutera, namely; Joseph Sutera, brother; Frank Sutera, brother; Jennie Simone, sister; Edward Holtrop, Jr., grand-

nephew; Matthew Holtrop, grand-nephew; and Ricky Holtrop, a minor, grand-nephew \*\*\*."

Count I alleged that the decedent had been declared incompetent on July 31, 1985, and had been suffering from

"extreme congestive heart failure for a period prior to the execution of the will \*\*\* which caused him to have poor blood circulation; resulting in his being incapable of understanding the nature of his acts or to make any rational decisions of any kind concerning his personal and financial matters; \*\*\* severe coronary artery disease causing shortness of breath and chest pains that further impaired his ability to understand what property he had and did not have the mental capacity to make a valid will."

Court II alleged:

"That the decedent was a homosexual person and was very apprehensive of being placed in any nursing home or similar institution.

That the respondent \*\*\* threatened to expose the deceased unless he agreed [*sic*] to do whatever the respondent \*\*\* wished.

The domination and intimidation by said respondent was complete and exclusive resulting in the deceased being totally without any free agency of his own.

The complete domination over the free will of the deceased was enhanced by the declining physical condition \*\*\* of the decedent.

The aim and purpose of the \*\*\* respondent \*\*\* was to compel the deceased to execute a last will and testament in favor of her daughters \*\*\* to the exclusion of the other lawful heirs of the deceased.

The resulting will \*\*\* was the product of duress exercised upon the deceased by respondent Mary Pulizzano."

On March 20, 1989, respondents filed a third motion to dismiss which maintained that petitioners' amended petition was deficient because it failed to join all heirs and legatees as parties, failed to allege the interests of the petitioners so as to establish jurisdiction, and failed to set forth sufficient factual allegations to state a cause of action for lack of testamentary capacity or duress. More specifically, respondents claimed that the petition contained no allegations which recited the manner in which the free will of the testator was impaired at the time the instrument was executed. On May 23, 1989, the trial court dismissed petitioners' amended petition for failure to state a cause of action and denied petitioners leave to amend because the cause was four years old.

■ Section 2—603 of the Illinois Code of Civil Procedure provides

in pertinent part that "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action." (Ill. Rev. Stat. 1987, ch. 110, par. 2–603.) The law requires that petitioners state pertinent facts to support their claim, and pleading requirements are not complied with by the use of language which is purely conclusional. *Pfendler v. Anshe Emet Day School* (1980), 81 Ill. App. 3d 818, 822, 401 N.E.2d 1094.

Undue influence sufficient to invalidate a will is defined as:

"[T]hat influence which prevents the testator from exercising his own free will in the disposition of his estate [citation] or which deprives the testator of free agency and renders the will more that of another than his own. [Citation.] The influence may be exerted at any time [citation] *but must be directly connected with the execution of the will and operate at the time the will is made.* [Citation.] The influence may be that of a third person, such as the spouse of a beneficiary, as well as that of direct beneficiaries." (Emphasis added.) (*Schmidt v. Schwear* (1981), 98 Ill. App. 3d 336, 342, 424 N.E.2d 401.)

Furthermore,

" '[T]he general rule in Illinois [is that] *** the pleading of undue influence in a will contest must contain a *specific recital of the manner in which the free will of the testator was impaired at the time the instrument was executed.* A mere conclusion that the testator was influenced by the persuasive or dominant nature of one of the beneficiaries is not sufficient.' " (Emphasis added.) *Merrick v. Continental Illinois National Bank & Trust Co.* (1973), 10 Ill. App. 3d 104, 111, 293 N.E.2d 767, quoting *Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 234, 145 N.E.2d 757.

In order to establish the lack of testamentary capacity, it must be shown that at the time the will was executed the testator lacked sufficient mental ability to know and remember who were the natural objects of his bounty, to comprehend the kind and character of his property and to make disposition of his property according to some plan formed in his mind. *In re Estate of Dossett* (1987), 159 Ill. App. 3d 466, 472, 512 N.E.2d 807.

As a preliminary matter, respondents argue that the first amended petition failed to allege the interests of the petitioners and was, therefore, properly subject to dismissal in accordance with the authority of *Wheeler v. Wheeler* (1890), 134 Ill. 522, 526, 25 N.E. 588. The jurisdiction of the equity court in *Wheeler* was stated to derive exclusively from the Probate Act of February 10, 1827 (Laws of 1827), and such jurisdiction could only be exercised in the mode and under the limitations therein prescribed. (*Wheeler v. Wheeler*, 134 Ill. at 525-26.) While the

time limitation described in the 1827 Probate Act within which bills might be brought was considered jurisdictional, contrary to respondents' argument, there is no indication from the opinion that the interests of the parties were necessary to have been alleged for jurisdiction to attach. *Wheeler v. Wheeler*, 134 Ill. at 526.

■ The jurisdiction of circuit courts to entertain will contests was discussed at length in *In re Estate of Mears* (1982), 110 Ill. App. 3d 1133, 1134, 443 N.E.2d 289. *Mears* concerned the dismissal of a petition contesting the validity of a will on the basis that it lacked jurisdiction because section 8—1(a) of the Probate Act provided that "all heirs and legatees of the testator must be made parties to the proceeding," and the executor had not been named. (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(a).) This court held that while the statute mandated the joinder of the representative, the trial court was in error in determining that its jurisdiction flowed from the statute. Rather, since the 1970 Constitution, the jurisdiction of the circuit court is derived directly from the Constitution. While the legislature could still impose substantive conditions precedent to the exercise of jurisdiction after 1964, the only condition precedent to the exercise of jurisdiction in the case of will contests is that the petition be filed within the time limited by the statute after the admission of the will to probate. (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(a); *In re Estate of Mears*, 110 Ill. App. 3d at 1138.) Since the petition had been filed within the statutory period, the circuit court had jurisdiction.

■ Likewise, in the present case, it is uncontroverted that the petition was filed within the statutory period, the only condition precedent to the exercise of jurisdiction by the circuit court. (Ill. Rev. Stat. 1985, ch. 110½, par. 8—1(a).) Accordingly, the amended petition was not subject to dismissal on the basis that the trial court lacked jurisdiction. Thus, we may proceed to petitioners' first argument.

Petitioners argue that count II of the amended petition alleged sufficient facts to support a cause of action based upon undue influence because it alleged decedent's deteriorating physical condition and a specific threat by one respondent which was analogous to blackmail. Petitioners argue that the authorities cited by respondents, *Merrick v. Continental Illinois National Bank & Trust Co.* (1973), 10 Ill. App. 3d 104, 293 N.E.2d 767, and *Heavner v. Heavner* (1930), 342 Ill. 321, 174 N.E.2d 413, are distinguishable because they concern mere allegations that a testator was dominated and controlled, unlike the present case, where a specific threat against decedent has been alleged. For related support, petitioners cite *Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 237, 145 N.E.2d 757, for the proposition that a person exerting undue influence need not be alleged to have actually taken part in the prepara-

tion or execution of the will because the requirement that the influence must be operative when the will is executed can be met by proof of some controlling force that operates secretly and which overcomes the free will of the testator at the time of execution. *Sterling v. Kramer*, 15 Ill. App. 2d at 237.

However, we believe *Sterling* also demonstrates that a pleader must do more than allege the existence of a specific, secret controlling force and that the testator's free will was thereby overcome. The complaint in *Sterling* contained detailed allegations of a conspiracy by one potential beneficiary and his wife to misrepresent the character of another potential beneficiary in a manner calculated to induce the testator to deny any inheritance to the second potential beneficiary. (*Sterling v. Kramer*, 15 Ill. App. 2d at 235.) The allegations of the complaint in *Sterling*, set forth in 17 counts, recite seven basic facts, including a conspiracy to force plaintiff from the testator's home, a scheme to trick the testator into living with a neighbor to facilitate the conspiracy to force the plaintiff from the home, constant misrepresentations by defendants to the testator about the plaintiff during the months preceding the will's execution at a time when the testator was in ill health and emotionally distraught, and that the testator executed the will because of the misapprehensions she had concerning the character of the plaintiff which were caused by constant misrepresentations defendants made during the months preceding the will's execution. Thus, the petition in *Sterling* alleged in detail the manner in which the controlling force operated at the time the will was executed.

■ In contrast, in the present case, even though decedent's deteriorating physical condition and a specific threat of exposure were alleged, petitioners have not alleged how that threat operated to overcome decedent's free will so that he was induced to execute his will in respondents' favor. Undue influence is that coercion which destroys the freedom of the testator and renders the instrument obviously more the offspring of the will of another, rather than his own. *Ryan v. Deneen* (1940), 375 Ill. 452, 455, 31 N.E.2d 582.

Petitioners here have merely alleged that decedent was dominated and intimidated by a specific threat of exposure with the result that he lacked free agency. This domination was alleged to be enhanced by his deteriorating physical condition. Such allegations are merely conclusional as to the operation of the alleged threat at the time the will was executed. To aver undue influence as a conclusion, facts must be stated warranting that conclusion and must go the extent of showing the testator was thereby deprived of his free agency. *Ryan v. Deneen*, 375 Ill. at 454.

In their brief, petitioners contend that "the testator is alleged to have executed his will under the fear that respondent's threat would be carried out." While such an allegation comes closer to those allegations sufficient to state a cause of action for undue influence, unfortunately the petition did not, in fact, contain such a statement. Consequently, we hold that the trial court properly dismissed count II of the petition for failure to state a cause of action predicated upon undue influence.

Petitioners secondarily argue that they have sufficiently alleged a cause of action in count I based upon lack of testamentary capacity. Respondents contend, however, that the allegations are insufficient as a matter of law in light of *Dietzel v. Posen* (1934), 278 Ill. App. 89. Our review of *Dietzel* indicates, however, that the petition there was declared insufficient because the allegation was not to the effect that the will was wholly the product of an unsound mind and memory, but was narrowly limited to a charge that the testator's mind was so impaired that he was incapable of making a just and proper distribution of his estate. Such an allegation was not a charge of mental incapacity to make a will. *Dietzel v. Posen*, 278 Ill. App. at 95.

In the present case, the allegations are not simply that decedent's ability to justly and properly distribute his estate was impaired, but that he "did not have the mental capacity to make a valid will." Thus, in terms of the narrow issue of sufficiency posed by *Dietzel*, what degree of incapacity must be alleged, the allegations appear sufficient. The question remains, however, whether such allegations remain conclusional because they do not make sufficient connection with the execution of the will.

While there is a dearth of cases dealing with the adequacy of pleadings required to state a cause of action for lack of testamentary capacity, our research discloses *American Bible Society v. Price* (1886), 115 Ill. 623, 635-36, 5 N.E. 126, where the court stated:

> "The bill, it has been seen, *charges that the testator had become, and was at the time of the making of the will*, of unsound mind and memory, thus, in effect, simply putting in issue his testamentary capacity, which, by our statute, is defined to be that of being of a prescribed age, and 'of sound mind and memory.' The only material question, manifestly, under this allegation, was whether the writing produced was the product of an unsound mind and memory. The specific name applied to describe that unsoundness, the means whereby the unsoundness was caused, or how it came about that the unsound mind and memory caused this writing to be drawn and signed, were matters of evidence that need not be alleged, and, if alleged, need not be proved." (Emphasis added.)

This view is reiterated in *Anlicker v. Brethorst* (1928), 329 Ill. 11, 20, 160 N.E. 197, where the supreme court stated that it was not necessary for a bill to name specifically the particular kind of unsoundness of mind nor the cause of mental unsoundness. See also *Bailey v. State Bank* (1983), 121 Ill. App. 3d 17, 22, 458 N.E.2d 1326.

■■ While *Dietzel* specifically delineates the degree and *American Bible* allows a limited factual description of the unsoundness of mind, we believe these cases also implicitly require an averment of a causal and temporal connection between that mental unsoundness and the execution of the will. In *Dietzel*, the court held that there was no sufficient allegation that the will was the product of an unsound mind and memory. (*Dietzel v. Posen*, 278 Ill. App. at 95.) In *American Bible*, the bill charged that the testator had become, and was at the time of the making of the will, of unsound mind and memory. (*American Bible Society v. Price*, 115 Ill. at 635-36.) In this regard, we are also mindful that lack of testamentary capacity must exist at the time the will was executed in order to invalidate that will; and further, we note that pleading requirements are not complied with by purely conclusional language.

Thus, we hold that the trial court properly exercised its discretion to dismiss the amended petition on the basis that the allegations were insufficient to state a cause of action for lack of testamentary capacity as well.

In conclusion, petitioners urge that even if dismissal of the amended petition was proper, they should be allowed leave to amend the petition again because the case was not actually four years old as the trial court had reasoned. They assert that this court previously determined that they had demonstrated the existence of a meritorious claim. Accordingly, the trial court should have liberally exercised its discretion to allow the amendment of their pleadings. *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841.

This court specifically stated that it was not deciding the merits of the case with respect to a motion to dismiss. Our conclusion that the petitioners had demonstrated a meritorious claim was stated to be only for purposes of a motion to set aside a default under section 2—1301(e). Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(e).

■ Despite Illinois' liberal policy of permitting amendment of pleadings, parties do not have an absolute right to so amend, but may do so only at the trial court's discretion. (*Ennis v. Illinois State Bank* (1969), 111 Ill. App. 2d 71, 75, 248 N.E.2d 534.) The determining factor for superseding a trial court's disallowance of a motion to amend must be found in a "clear abuse of discretion," considering the peculiar facts and circumstances of the case and the impact upon all parties in permitting

or not permitting the motion. (*Ennis v. Illinois State Bank*, 111 Ill. App. 2d at 75-76. See also *In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 171, 386 N.E.2d 862.) The purpose of the Probate Act is to permit an estate administration to get under way as quickly as possible, and yet to permit those who wish to question the will an adequate opportunity to test the validity of the will. *In re Estate of Carr* (1970), 126 Ill. App. 2d 461, 471, 262 N.E.2d 54; *In re Estate of Ariola*, 69 Ill. App. 3d at 171.

■ The respondents here have a right to have the validity of the will determined without further unnecessary delay. Petitioners filed their first petition to contest the will on January 23, 1986, approximately four years ago. At least 14 months of this four-year period were consumed by the petitioners' successful appeal of that original petition's dismissal for want of an appearance. On appeal, this court determined that there was at least some lack of diligence on the part of both parties. Following this court's decision on February 24, 1988, petitioners did not move to reinstate their petition for at least six months until November 28, 1988. This original petition was subsequently dismissed for failure to state a cause of action on January 24, 1989, and petitioners were allowed 30 days to amend. They did so with allegations which elaborated upon decedent's physical ailments in more detail. Subsequently, that amended petition was also dismissed on May 23, 1989, and this second appeal has consumed nearly 10 additional months. In view of this chronology and the trial court's duty under the Probate Act to weigh the parties' competing interests with respect to this will challenge, we believe the trial court properly exercised its discretion to deny leave to amend. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.