Eugene Littlefield, Plaintiff-Appellant, v. Alton and Southern Railroad, a Corporation, Defendant-Appellee.

Gen. No. 67–42.

Fifth District.

July 16, 1968.

O'Connell & Waller, of East St. Louis, for appellant.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), for appellee.

GOLDENHERSH, J.
Plaintiff appeals from the judgment of the Circuit Court of St. Clair County entered upon a jury verdict for the defendant in plaintiff's action for damages brought under the provisions of the Federal Employers' Liability Act (Title 45, USCA, § 51 et seq.) and the Boiler Inspection Act (Title 45, USCA, §§ 22–29).

Plaintiff argues that the evidence was uncontroverted as to any material issue and the only legitimate inference from the evidence is that plaintiff was injured as the result of defendant's violation of the Boiler Inspection Act. Plaintiff contends that the trial court erred in refusing to direct a verdict for plaintiff on the issue of liability, and submit the case to the jury solely for the assessment of damages.

Plaintiff was employed by defendant as a switch foreman. Defendant owned three engines which differed from the others it operated in that the doors to the switchmen's compartment, as originally designed, were 15 inches shorter than on its other engines. Because of complaints made by the General Chairman of the union that the men were bumping their heads on the door frame, defendant sealed the short doors on the fireman's side on each of the engines and cut a full-length door. There was no modification made on the engineer's side, and there is a conflict in the testimony as to why those doors were permitted to remain in their original condition. There is testimony that it was difficult to enter or leave the engine by the short door.

Plaintiff testified that on December 21, 1962, he climbed up on defendant's engine No. 43 in order to use

473

the radio equipment to contact the yardmaster. The hand set for the radio is located immediately inside the short door. In entering by the short door he struck his head on the steel door frame, and a few minutes later, struck it again against a pipe which was part of the support for the radio equipment. On December 24 or 25 he noticed a "blur" in his eye. He had a cold and thought it might have settled in his eye. On December 26 he was bowling and when he looked down the alley "everything was just a big blur in my eye." On January 2, 1963, he went to Dr. Szewczyk, an ophthalmologist. Dr. Szewczyk examined his eyes and inquired whether he had hit his head recently. He answered "I would say two or three weeks or a month ago" and also told him of being injured in an automobile accident ten or twelve years earlier. He was told that he had a detached retina, and was referred to doctors at Missouri Pacific Hospital in St. Louis.

When plaintiff spoke with Dr. Szewczyk and the doctors in St. Louis he was not certain of the exact date of the occurrence. He remembered with whom he had been working, and on what engine, and from that information was able to determine that it happened when he was working on engine 43 on December 21, 1962.

William Stufflebeam, and William Duhr, plaintiff's fellow crew members, testified that they saw plaintiff strike his head upon entering the engine. Neither could fix the exact date, but both stated that they had regularly worked with plaintiff from December 9 to December 23, 1962, and to the best of their recollection, it was shortly before December 23, 1962.

 The Boiler Inspection Act imposes upon the carrier an absolute and continuing duty to maintain a locomotive and all of its parts in a condition safe to operate without unnecessary peril to life or limb. Lilly v. Grand Trunk Western R. Co., 317 US 481, 87 L Ed

411, 63 S Ct 347. Assuming, arguendo, that the maintenance of the short door was a violation of the Boiler Inspection Act as a matter of law, there still remained the issues of whether plaintiff suffered an injury, and whether the injury resulted from the alleged violation. From our review of the evidence, we conclude that these issues were properly submitted to the jury as the finders of fact, and the court did not err in refusing to direct a verdict on the issue of liability.

We have examined the cases cited by plaintiff, and while they are authority for the proposition that the evidence presents a jury question, they do not sustain the contention that he was entitled to a directed verdict.

Plaintiff contends that the court erred in admitting into evidence a memorandum prepared by defendant's witness, Geraldine Majka.

Miss Majka testified that she was employed as secretary to defendant's superintendent. In January 1963, she met plaintiff at a bowling alley, and noting that one of his eyes was partially closed, she inquired as to what had caused the condition. In response to her inquiry plaintiff stated that he did not know, his vision had become blurred and he decided to have it checked. He did not state that the condition had resulted from his striking his head on the door of a locomotive.

In cross-examination the witness stated that she had been employed by defendant for 5 years, and for 5 years prior to that time, had been employed by the law firm in which defendant's trial counsel was a partner. She stated she made no searching inquiry as to what caused the condition since that was not her job; she inquired out of personal interest because she knew plaintiff. She did not report the conversation to anyone connected with defendant until some three months later when she learned he was suing defendant, claiming an injury while working on an engine. On cross-examination she stated that she

had prepared a memorandum at that time, she did not have the memorandum in her possession, and assumed defendant's trial counsel had it. She was interrogated as to whether there was a cocktail lounge in the bowling alley and whether she had had anything to drink prior to the conversation with plaintiff.

On redirect examination she was shown a paper which she identified as the memorandum which she made. She stated that when she told someone at the railroad office of her conversation with plaintiff, she was asked to prepare the memorandum, and did so. Over plaintiff's objection, the memorandum was admitted into evidence.

Plaintiff contends that the memorandum is self serving, is merely corroborative of her testimony, and its admission was error.

Defendant contends that the cross-examination of plaintiff's counsel tended to impute that the witness was testifying under the influence of a motive to make a false statement, or that her testimony was a fabrication of recent date; that plaintiff's counsel opened the door for the admission of the memorandum by his cross-examination; that defendant was compelled to produce and offer the memorandum since its failure to do so would give rise to the presumption that the evidence was unfavorable to it; that the testimony of the witness, and her memorandum, were merely cumulative evidence, not contradicted by plaintiff, and its admission was not prejudicial to plaintiff.

In Lyon v. Oliver, 316 Ill 292, at page 303, 147 NE 251, the Supreme Court said: "As a general rule, proof of statements made by a witness out of court harmonizing with his theory is inadmissible, but where it is charged that his story is a recent fabrication or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible."

The cross-examination was sharp, and leaves little doubt that it was intended to create the impression that the testimony was the result of an improper motive, and a recent fabrication.

██ Counsel have cited numerous cases in support of their contentions but only one Illinois case, Stolp v. Blair, 68 Ill 541, cited by both parties, involves the specific issue here presented, i. e. under the above stated rule does cross-examination, without some impeaching evidence, make prior consistent statements admissible? As we read Stolp v. Blair, supra, the answer is in the negative.

We have examined the cases cited by defendant in support of its argument that plaintiff's cross-examination of the witness opened the door for the admission of the memorandum and find them all distinguishable. Darling v. Charleston Community Memorial Hospital, 50 Ill App 2d 253, 200 NE2d 149, involved a telephone conversation; People v. Burage, 23 Ill2d 280, 178 NE2d 389, involved a conversation between the defendant and an informer; Smith v. City of Rock Island, 22 Ill App2d 389, 161 NE2d 369, involved an explanation by what was meant by a statement in the plaintiff's deposition; the others involve answers elicited upon improper cross-examination.

We have considered defendant's argument that it was compelled to produce the memorandum since its failure to produce evidence within its control would have given rise to a presumption that the evidence was unfavorable to it. We do not disagree with the abstract proposition of law as presented, but do not find it authority for the admission of evidence, otherwise clearly inadmissible.

The memorandum is not merely cumulative of the witness' testimony since it includes several matters not covered in her testimony, either on direct or cross-examination.

The record does not support defendant's statement that the testimony of the witness was not contradicted. Upon

477

cross-examination, plaintiff testified that he told her the doctors had told him his eye injury was the result of a blow on the head.

The court erred in its ruling on the memorandum, and the grounds upon which defendant bases its arguments neither excuse its admission nor cure the error.

Plaintiff contends that the trial court erred in permitting defendant, over objection of plaintiff's counsel, to cross-examine plaintiff with respect to the contents of a complaint filed in his behalf, by his mother as next friend, seeking to recover damages for injuries suffered while he was a minor.

The record shows that plaintiff, on direct examination testified that he sustained an injury to his head in an automobile accident in November 1950, but he did not sustain any injury to his eyesight. On cross-examination he stated he did not remember if he claimed to have suffered a fractured skull, but he "imagined" that if the lawyer put it in his complaint, he agreed to it, and that it was later found he had no fracture of the skull.

On redirect examination plaintiff testified that he never saw the complaint in the case arising from the 1950 accident, that he was a minor at the time, did not sign the complaint and did not know what was in it.

██ The record shows that defense counsel did not read from the complaint, and the only statement which purports to identify any document as a complaint is that of plaintiff's counsel upon redirect examination. The complaint was not admitted in evidence. There is a statement by defense counsel made during cross-examination that "the lawyer said you were caused to sustain a fracture of the skull" to which plaintiff objected, and one question to which objection was made. The statement should not have been made, and the question was argumentative. The objections in both instances are on grounds different from those urged on appeal, and under

the circumstances, the error, if any, was not preserved for review.

Defendant contends that the court erred in admitting, over objection, a certified copy of plaintiff's application for renewal of his driver's license. The application is dated June 17, 1964, and contains this question "To the best of your knowledge, do you have adequate vision to drive safely without glasses or contact lenses?", to which plaintiff answered "Yes."

The record shows that when plaintiff, on cross-examination, was asked about the application, no objection was made. On redirect examination, he stated that he did not remember that the application contained the question.

■ When the application was offered in evidence, plaintiff objected, on the ground, inter alia, that it had no impeachment value. Plaintiff, in his brief, has attacked the ruling on other grounds but since they were not included in the objection, cannot be considered here.

Although the cause of the condition of plaintiff's eye is strenuously contested, there is no dispute that plaintiff, without glasses, is blind in his right eye. A search of the record fails to reveal any testimony which is impeached by the exhibit. Plaintiff testified that there is no restriction on his driver's license which requires that he wear glasses when driving, and that he does, in fact, drive without glasses.

■ Assuming the statement in the application to be an admission against interest, it is not material to the issues since the extent of his injury is not an issue in the case, and the application should not have been admitted.

■ Plaintiff contends that defendant's counsel, under the guise of laying a basis for impeachment improperly asked a question of plaintiff, and upon eliciting a denial failed to follow up with impeaching evidence. Citing Gordon v. Checker Taxi Co., 334 Ill App 313, 79 NE2d 632; Duff v. Ewing, 60 Ill App2d 382, 208 NE2d

320; Schoolfield v. Witkowski, 54 Ill App2d 111, 203 NE 2d 460; and Miller v. Chicago Transit Authority, 3 Ill App2d 223, 121 NE2d 348, plaintiff argues that the effect was so prejudicial as to require reversal.

The record shows one question, asked and answered without objection. Defendant did not propound a series of questions and in the context in which the question was asked and answered, we fail to see that it became incumbent upon defendant to offer any testimony on the matter. The situation presented here is so clearly distinguishable from those presented in the cases cited, as to require no further discussion.

In Duffy v. Cortesi, 2 Ill2d 511, at page 517, 119 NE2d 241, the Supreme Court said: "Where error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial. (Crane Co. v. Hogan, 228 Ill 338.)"

In Both v. Nelson, 31 Ill2d 511, at page 514, 202 NE2d 494, the Supreme Court said: "It is not every error, of course, that will require a reversal. Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. (Baker v. Baker, 412 Ill 511; Lindroth v. Walgreen Co., 407 Ill 121; Pease v. Kendall, 391 Ill 193.) But where the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal. (Edwards v. Hill-Thomas Lime & Cement Co., 378 Ill 180; Chicago Burlington and Quincy Railroad Co. v. Warner, 108 Ill 538.)"

In addition to Miss Majka defendant called Harry Foley, its Director of Personnel, who testified to two conversations with plaintiff. The first of these occurred on January 9, 1963, while both plaintiff and Foley were patients in the Missouri-Pacific Hospital. He stated that plaintiff told him he was being prepared for surgery for

a detached retina, he didn't know what caused it, and the doctor said it could be caused from a blow on the head. He stated that plaintiff did not tell him he had struck his head on an engine.

The second conversation took place when Mr. Foley spoke with plaintiff about a notice received from the Railroad Retirement Board and a report which he wanted plaintiff to file. He stated that plaintiff said, "I told you at the hospital that my doctor told me that a detached retina can be caused from a blow on the head, so I am checking around with some of the fellows to see what I come up with. If I come up with anything, I will notify you."

Defendant also called John Boswell, a crew dispatcher who testified to a conversation with plaintiff in the course of which plaintiff told him he had a detached retina, but he didn't know how it happened.

From an examination of the record it becomes apparent that if plaintiff were to prevail in this case, it was essential that the jury believe his testimony with respect to the occurrence out of which he alleges his injury arose. The testimony of Miss Majka, Foley and Boswell serves no purpose except to attack his credibility. Under the circumstances, both parties litigant were entitled to have the jury consider the testimony and judge its credibility free of error which, as stated in Both v. Nelson (supra) might "tip the scales" in favor of one of the parties.

The erroneous admission of the Majka memorandum provided improper corroboration for her testimony. The application for renewal of plaintiff's driver's license, inadmissible because it was not impeaching of any testimony or relevant to any issue in the case, might well have created the impression in the minds of the jury that plaintiff was careless of the truth in answering the questions it contained, and caused them to conclude that his testimony was not worthy of belief.

481

 This court is unable to measure the extent to which the erroneously admitted memorandum, corroborative of Miss Majka's testimony, or the improper impeachment effected by the admission of the application for renewal of plaintiff's driver's license, affected the jury's opinion of plaintiff's credibility. Under the circumstances, we cannot say that "the record affirmatively shows that the error was not prejudicial" as required by Duffy v. Cortesi (supra) or as stated in Both v. Nelson, supra, that the error did not tip the scales in defendant's favor. We conclude, therefore, that the error requires reversal of the judgment and remandment for a new trial.

For the reasons set forth the judgment of the Circuit Court of St. Clair County is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

EBERSPACHER and MORAN, JJ., concur.