CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* EASTERN ILLINOIS WATER COMPANY *et al.*, Defendants.—(EASTERN ILLINOIS WATER COMPANY, Defendant-Appellant.)

(No. 75-74;

Fifth District—August 12, 1975.

John P. Ewart and John H. Armstrong, both of Craig & Craig, of Mattoon, for appellant.

S. L. Seftenberg and Leonard S. Shifflett, both of Wilson & McIlvaine, of Chicago, and Richard H. Eagleton, of Robinson, for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This case involves a mortgage foreclosure proceeding in which plaintiffs sought the appointment of a receiver, an injunction against diversion of funds, an accounting, a decree for the sum found due, a foreclosure sale, a deficiency decree (if necessary), and any further relief the court should find equitable and proper. Essentially the property to be foreclosed constituted the entire operating systems of defendant Eastern Illinois Water Company, which secured outstanding Series A and Series B bonds issued by the defendant water company. The trial court, after a trial without a jury, found the sum of $2,222,310.97 to be due and owing the plaintiffs by defendant, which sum included principal and interest on the bonds and expenses and attorneys' fees. The court ordered that unless said sum was paid within 30 days after the entry of the decree, the mortgaged property should be sold at public sale to satisfy the obligations. From the decree the defendant brings this appeal.

Defendant contends that the trial court committed errors in that the court did not allow defendant reasonable discovery by virtue of limiting the scope of certain interrogatories, the court denied defendant reason-

able discovery by way of a premature trial setting and denial of defendant's motion for continuance, and the court admitted improper evidence of expenses allegedly incurred by plaintiffs. None of these issues involve the merits of plaintiffs' case. The discovery issues raised relate to an affirmative defense which defendant asserted, and the evidence issues relate to the amount of the award made by the trial court. It will nevertheless be helpful in understanding the issues on appeal to set out as simply as possible the circumstances out of which this case arose.

Defendant Eastern Illinois Water Company (hereinafter referred to as "Water Company") is a public utility engaged in the production, distribution, and sale of water to the public. On or about January 1, 1963, Water Company became indebted in the amount of $1,850,000 to plaintiffs John Hancock Mutual Life Insurance Company, Royal Neighbors of America, and the Fidelity Mutual Life Insurance Company, for which Water Company issued Series A bonds bearing interest at the rate of 5% per annum and secured by an indenture of mortgage which essentially covered all property owned or thereafter acquired by Water Company. On or about March 28, 1972, Water Company became indebted to Fidelity Mutual Life Insurance Company in the amount of $325,000, for which Water Company issued Series B bonds bearing interest at the rate of 9½% per annum. A supplemental indenture of mortgage was executed, the terms of which provided that it was to be construed in connection with the original indenture of mortgage and was to apply for the equal benefit of the holders of both the Series A bonds and the Series B bonds. Continental Illinois Bank and Trust Company was made trustee under the original and the supplemental mortgage.

On January 1, 1974, the amount of outstanding principal on the Series A bonds was $1,666,000 and on the Series B bonds was $318,500. The semi-annual interest payments on the Series A and Series B bonds in the respective amounts of $41,650 and $15,128 and the sinking fund deposits in the respective amounts of $18,579 and $4,551, all of which were to be paid on January 1, 1974, were not paid when due. Subsequently Mr. Barry C. Phelps, a director and the chairman of the Board of Directors of Water Company, was notified that a meeting would be held by representatives of the plaintiff companies on January 29, 1974, and Mr. Phelps was asked to attend at 2 p.m.

Before discussing the January 29, 1974, meeting it will be helpful in understanding this case to briefly discuss some background information which will demonstrate why Water Company came to be in the adverse financial situation that it was in January 1974. For the most part the

background information comes from testimony of Barry C. Phelps, and describes the situation as it was in early 1974.

.. Water Company is wholly owned by the Water Securities Company, a Delaware Corporation whose principal place of business is 216 Higgins Road, Park Ridge, Illinois. The directors of Water Company are Barry C. Phelps, Melvin Parker, James P. Risely and Thomas McMahon. Phelps is chairman of the Board of Directors. Phelps is also the president and a director of Water Securities and owner of 15% of the stock of Water Securities. The Springfield Corporation owns 52% of the stock of Water Securities, and the remaining stock is owned by William McMillan and the Jewel Tea pension fund. The Springfield Corporation is an Illinois corporation whose principal place of business is also 216 Higgins Road, Park Ridge, Illinois. Phelps owns 80% of the stock of Springfield Corporation; the rest of the stock is owned, according to the testimony of Phelps, by his friends and relatives. Phelps is the president of Springfield Corporation.

. During 1973, Water Company, at the direction of Phelps, took out a number of short term or demand loans from several different banks, which totaled over a million dollars. Water Company acted as a conduit of the money to Water Securities. Water Securities, at the direction of Phelps, invested the money in three corporations (identified by Phelps as United Utilities, Stress Pipe Research, and Magnatherm) and in 29 oil and gas wells. Phelps is a director and chairman of the Board of Directors of United Utilities and a director of Magnatherm. Water Securities owns 35% of the stock of Magnatherm and is a controlling shareholder of Stress Pipe Research. It is not clear from the record what percentage of the stock of United Utilities is owned by Water Securities.

.. As mentioned before, Water Company failed to make the January 1, 1974, payments to plaintiffs and, as a result, the meeting was called for January 29. On the morning of that date various representatives of the plaintiff companies held a meeting at which they discussed the Water Company situation. Four days previously the plaintiff companies had received a monthly statement from Water Company for the month of September 1973, which showed that Water Company had made advances to and had accounts receivable from the Water Securities Company in the respective amounts of $258,000 and $16,962. However, according to the testimony of three representatives of the plaintiff companies who had attended the meeting on the morning of January 29, it came to the attention of those in attendance with Water Company had made additional advances to and had additional accounts receivable from Water Securities and other affiliates to which the outstanding amount totaled over

$1,249,000. It is not clear from the record how those in attendance became aware of the additional advances and accounts receivable. At any rate, they decided to accelerate the principal amount of the Series A and Series B bonds.

At a later meeting held that day, attended by the same representatives of the plaintiff companies and additionally by Barry Phelps, Phelps was given notice of the acceleration. According to the testimony of Phelps, after the meeting, Clarence Warren, a representative of plaintiff Royal Neighbors of America, advised him that the plaintiff companies would be willing to withdraw the acceleration if the management of Water Company was strengthened, if tighter controls were placed on the transactions of Water Company and if the advances made by Water Company were returned.

On February 20, 1974, plaintiffs filed their original complaint. On June 19, 1974, Water Company notified the plaintiff companies that Water Company would tender the past due principal and interest on June 21, 1974. On June 21, a representative of Water Company appeared at the location designated by Water Company and tendered to a representative of plaintiff companies the past due principal and interest; however, the tender was refused.

Subsequently, on June 24, 1974, Water Company filed an amended answer in which Water Company raised the affirmative defense that it would be inequitable to grant the relief sought by plaintiffs. Essentially there were two bases for the defense raised. The first was that the acceleration was for the sole purpose of obtaining the entire amount of the obligation on the Series A and Series B bonds in order to reinvest that amount at higher interest rates. The second was that Water Company had entered into negotiations to settle and cure the default in reliance on oral representations of plaintiffs that the default could be cured by payment of past due principal and interest.

Plaintiffs filed a reply to the affirmative defense on July 8, 1974. Then on July 23, 1974, Water Company filed, among other things, interrogatories to each plaintiff. The interrogatories to each plaintiff were substantially the same and, among other things, asked for information with respect to every meeting attended by an officer or employee of each plaintiff at which the subject of bond or debenture investments in general were discussed and at which the subject of the bonds described in the complaint were discussed.

On July 29, 1974, plaintiffs filed interrogatories to Water Company which asked, among other things, for an identification of all property owned by Water Company; for whatever information upon which Water Company had based its affirmative defense; for the minutes of any meet-

ings of the directors, shareholders, management committees or other committees held since January 1972; for all evidence of indebtedness of Water Company; and for the names of each shareholder. Also on July 29, 1974, plaintiffs made a motion, which was allowed, for trial to be set for August 14, 1974.

On August 1, 1974, Water Company received the notice of trial setting, and 4 days thereafter filed an objection to the trial setting and made a motion for continuance. The grounds alleged in support of the objection and motion were that it would be impractical and prejudicial to Water Company to go to trial on August 14 because: (a) a motion filed by defendant Water Company as to plaintiffs' reply to the affirmative defense had not been heard; (b) defendant's interrogatories had not been answered; (c) once defendant's interrogatories were answered the defendant would want to take depositions of certain individuals; (d) a motion to consolidate this cause with another cause had not been heard; and (e) plaintiff's interrogatories had not been answered.

On August 9, 1974, all plaintiffs filed answers and objections to Water Company's interrogatories. On August 14, 1974, the date set for trial, defendant Water Company filed a supplemental objection to trial setting and motion for continuance. The grounds alleged for the supplemental objection and motion were that: (a) no hearing had been held on plaintiffs' objections to defendant's interrogatories; (b) defendant had not had an opportunity to take depositions of certain individuals identified in the answers to defendant's interrogatories; (c) certain exhibits attached to answers to defendant's interrogatories were illegible; and (d) a petition of the Illinois Commerce Commission to intervene had not been heard.

All pending motions were set and heard by the trial court on August 14, 1974; and the case went to trial later that day.

Defendant Water Company first contends that in allowing plaintiffs' objections to defendant's interrogatories the trial court denied defendant reasonable discovery. Defendant states that the affirmative defense raised in the answer to plaintiffs' amended complaint was based on a rule of law that, when the unconscionable conduct of a creditor contributes to a default on an installment obligation, a court may refuse to enforce an acceleration clause in the underlying agreement. For this rule of law defendant cites *Arizona Coffee Shops, Inc. v. Phoenix Downtown Park Association* (1963), 95 Ariz. 98, 387 P.2d 801; *Koschorek v. Fischer* (Fla. App. 1962), 145 So.2d 755; *Lieberbaum v. Surfcomber Hotel Corp.* (Fla. App. 1960), 122 So.2d 28; and *Althouse v. Kenny* (Fla. App. 1966), 182 So.2d 270. Defendant asserts that certain information was needed to properly develop the facts upon which the affirmative defense would rest.

In order to obtain information with which to develop the facts upon which the affirmative defense would rest, defendant filed interrogatories to plaintiffs on July 29, 1974. The interrogatories asked for: (1) information with respect to every meeting since January 1972, at which the subject of bonds or debenture investment in general or the bonds named in the complaint were discussed; (2) information with respect to every memorandum or document written since January 1973, which discussed those same subjects; and (3) information with respect to meetings, memoranda or documents in which the default on the bonds named in the complaint were discussed.

The plaintiffs answered fully the interrogatories which pertained to the discussion of defendant's default and objected to the others, answering them only with respect to meetings, memoranda, and documents from the time of default (January 1974) until the time the complaint was filed (February 20, 1974). The trial court allowed the objections.

■■ The trial judge has wide discretion in controlling the scope of discovery. (*People ex rel. General Motors Corp. v. Bua*, 37 Ill.2d 180, 226 N.E.2d 6; *Merrick v. Continental Illinois National Bank & Trust Co: of Chicago*, 10 Ill.App.3d 104, 293 N.E.2d 767.) Supreme Court Rule 201 (c)(1) (Ill. Rev. Stat., ch. 110A, § 201(c)(1)) gives to the trial judge the power to deny, limit, condition or regulate the taking of discovery in order to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression. *Anastos v. O'Brien*, 3 Ill.App.3d 1015, 279 N.E.2d 759.

By allowing the plaintiffs' objections the trial judge limited defendant's discovery to the period subsequent to defendant's default. The reasons for the trial judge so limiting defendant's discovery do not appear in the record; however, we do not feel that the limitation was an abuse of discretion nor was it unreasonable. If plaintiffs had some reason other than a genuine concern for their investment in Water Company (such as a conspiracy to take advantage of technical defaults in order to be able to reinvest the funds), some evidence of the ulterior reason would surely have appeared in the evidence produced in the answers given to the interrogatories. To force plaintiffs to answer interrogatories with respect to the entire period referred by defendant could have placed an unnecessary expense and burden on plaintiffs, which the trial court could properly avoid.

■■ Moreover, even if defendant had obtained all of the discovery which it sought, we do not feel that defendant could have benefited from it; and therefore, defendant was not prejudiced by the limitations placed on the discovery. As stated above, the affirmative defense which defendant sought to establish was based upon the principle that equity

may deny an acceleration when the unconscionable conduct of the creditor has contributed to the default. In none of the cases cited above by defendant for this principle, however, was the court faced with a situation, such as that in the instant case, in which the creditor seeking the acceleration was confronted with a serious threat to his security.

In *Koschorek* the defendant-debtor began making monthly payments of $85 on a mortgage indebtedness of $12,450 in January 1961. In November 1961 the defendant failed to make a $47.52 insurance premium payment that came due. In February 1962 the plaintiff-creditor paid the premium. The following month the defendant took out a policy with another insurer. The plaintiff rejected the new policy and subsequently made a demand for payment of the $47.52. On May 11, 1962, the plaintiff filed a complaint for acceleration. The defendant was served with process May 14 and tendered the $47.52 on May 15. Plaintiff rejected the tender. The defendant had at all times continued to make the $85 monthly mortgage payments and the defendant had accepted them. The Florida District Court of Appeals pointed out that a failure to accelerate within a reasonable time after default, especially when the delay works to the benefit of the mortgagee, can operate as a waiver and estoppel so that foreclosure can be denied. The court stated that an equity court can deny an acceleration where substantial equities operate to render the acceleration unconscionable and held that the lower court's denial of acceleration was proper.

In *Althouse* the defendant-debtor was to make $128 monthly payments on a mortgage indebtedness of $18,125. Apparently the first monthly payment and the payments made thereafter were each a month behind. The main question was whether the plaintiff-creditor should be estopped from foreclosing because of the acceptance of each overdue payment so that an acceleration would be unconscionable.

In *Lieberbaum* the defendant-debtor failed to make the mortgage payments on the due date or within the 15-day grace period. On the 17th day after the due date the creditor filed suit for an acceleration. The very next day the past due payments of $8,962.50 plus $1000 attorneys' fees were tendered but refused. The court held that where the plaintiff knew from past experience that the nonpayment was caused by some excusable oversight and that the plaintiff could have secured the payment by a single demand and prevented the acceleration granting of the acceleration would be inequitable.

In *Arizona Coffee Shops*, 1 week after an interest payment was due, the president of the defendant-mortgagor went into a shop owned and operated by the president of the plaintiff-mortgagee and, in the course of a conversation, mentioned that his wife (who was the bookkeeper of

the mortgagor) was ill. The president of the mortgagee made no mention of the fact that the interest payment was due and 3 weeks thereafter filed suit to foreclose. The defendant asserted that plaintiff had received nearly half of the $350,000 purchase price at the time of the default, that the interest payment amounted to only $2,532, and that the defaulted amount was tendered and rejected immediately after the suit was commenced. Since the trial court had granted plaintiff summary judgment, the appellate court reversed and remanded on the basis that if defendant could prove the asserted facts, plaintiff's conduct would be unconscionable and foreclosure inequitable.

In *Arizona Coffee Shops* the court, quoting from *Domus Realty Corp. v. 3440 Realty Co.* (1943), 179 Misc. 749, 40 N.Y.S.2d 69, defined oppressive conduct as conduct which is burdensome, harsh, or merciless and defined unconscionable conduct as conduct which is monstrously harsh, that is shocking to the conscience. In the instant case we cannot say that the conduct of plaintiffs was monstrously harsh or shocking to the conscience. Plaintiffs were faced with a situation where their security was severely threatened as a result of corporate looting. As pointed out above, Water Company at the direction of Phelps, had taken out loans amounting to over a million dollars, none of which went to the benefit of the Water Company. By Phelps own admission Water Company was nothing more than a conduit of the money to Water Securities. Faced with such activity on the part of the mortgagor company, the conduct of the mortgagees in seeking an acceleration, even if with the additional motive of reinvesting the funds at higher interest rates, cannot be considered unconscionable or even oppressive as those terms are defined above. Therefore, the affirmative defense of unconscionable conduct on the part of the plaintiffs could not have benefited Water Company.

Furthermore, it is significant in determining whether the trial judge exercised proper discretion in relation to defendant's interrogatories to note that Illinois, in contrast to the jurisdictions involved in the cases cited by defendant above, offers a mortgagor faced with an acceleration a statutory procedure for avoiding the acceleration. Under the applicable statute (Ill. Rev. Stat., ch. 95, § 57), a mortgagor of real property is given 90 days from either the date of service of summons, the entry of an appearance, the filing of an answer, or any other act submitting to the jurisdiction of the court, or is given until the entry of a decree of foreclosure in the suit (whichever occurs first) to avoid foreclosure by tendering the entire amount due (without the accelerated amounts), including costs, expenses, attorneys' fees, and trustees' fees and curing all other defaults. In the instant case, the summons was served upon defendant Water Company on February 20, 1974. On June 21, 1974, the

defendant tendered past due payments on principal and interest and a penalty amount for late payment. Without even considering whether this tender satisfied the statutory requirements as to that which must be tendered to take advantage of the statutory provision, it is clear that the tender came well beyond 90 days from the time of service of summons. In short, although defendant could have avoided the accelerations, regardless of plaintiffs' motives for accelerating, defendant failed to take advantage of the saving statute. In the face of defendant's own shortcomings in failing to take advantage of the saving statute, it is questionable that defendant should have been allowed to take advantage of any unconscionable conduct on the part of plaintiffs, even if it had been shown. We cannot say that the trial court abused its discretion in limiting discovery in the manner in which it did as to the unconscionability defense raised by defendant Water Company.

Defendant next contends that it was not allowed reasonable discovery because of a permature trial setting and a denial of defendant's objections to trial setting and defendant's motion for continuance. On August 14, 1974, before the trial was begun, all pending matters, including this objection and motion were heard and decided by the trial court.

■■ It is elementary that a cause must be at issue by proper pleadings on file before commencing the hearing of evidence. (*Housing Authority of Williamson County v. Collier*, 13 Ill.App.3d 1088, 302 N.E.2d 365 (abstract only); 3A Nichols Illinois Civil Practice, § 3284, at 76 (1961).) Generally, civil actions become triable as soon as the issues thereon are made up; and once the action becomes triable, the fixing of the time for trial rests in the discretion of the trial court and its action will not be disturbed on appeal in the absence of a manifest abuse of discretion. (*Housing Authority of Williamson County v. Collier.*) Similarly, a motion for continuance, except where it is based on a statutory cause, is addressed to the sound discretion of the trial court. (Ill. Rev. Stat., ch. 110A, § 231; Ill. Rev. Stat., ch. 110, § 59; *Thomas v. Thomas*, 23 Ill.App.3d 936, 321 N.E.2d 159; *Griffith v. Young Men's Christian Association of Metropolitan Chicago*, 7 Ill.App.3d 1040, 288 N.E.2d 718.) The granting or denying of a motion for continuance will not be disturbed on appeal unless there has been a manifest abuse of discretion or a palpable injustice. (*Thomas v. Thomas.*) A party seeking a reversal on the basis of a denial of a motion for continuance to obtain evidence must show that the evidence sought was material and that he has exercised due diligence in trying to obtain it. Ill. Rev. Stat., ch. 110A, § 231(a) and (b); *Vollentine v. Christoff*, 24 Ill.App.3d 92, 321 N.E.2d 49; *Parker v. Newman*, 10 Ill.App.3d 1019, 295 N.E.2d 503.

The gist of defendant's contention is that it was unable before trial

to take the depositions of 12 persons, whose names were revealed in plaintiff's answers to defendant's interrogatories, who might have had knowledge relevant to defendant's affirmative defense. Because, as we have stated previously, we do not feel defendant could have benefited from the affirmative defense asserted, we cannot say that the defendant was prejudiced by not having been able to take the depositions of the twelve named individuals. However, even assuming *arguendo* that defendant might have benefited from whatever information it might have obtained from having taken the depositions, it is clear that defendant did not exercise due diligence in seeking to get the depositions.

Defendant's affirmative defense was raised in the amended answer the defendant filed on June 24, 1974. Plaintiff's reply to the affirmative defense was filed on July 8, 1974. It is apparent from the record, particularly the testimony of Barry Phelps, that long before defendant even filed the amended answer defendant knew, or should have known, the identity of at least 9 of the 12 persons, and the fact that those 9 persons might have information relevant to the affirmative defense. During his trial testimony Phelps identified the nine individuals as either among those who had attended the January 29, 1974 meeting or among those with whom he had had conversations between January 1, 1974, and January 29, 1974, concerning the default and possible cure.

■■ Despite this knowledge, and despite the fact that defendant could have pursued the depositions of at least those nine individuals without them having been identified in plaintiffs' answers to defendant's interrogatories, defendant made no efforts to obtain their depositions. Under these circumstances we do not feel defendant has shown an abuse of discretion in the trial court's denial of defendant's objection to the trial setting and defendant's motion for continuance.

The next issue on this appeal is whether certain exhibits introduced into evidence by plaintiffs were improperly admitted. At that trial, in order to prove expenses incurred by plaintiffs as a result of defendant's default on the mortgage, plaintiffs introduced a number of letters which had been sent to defendant by plaintiffs. The letters were nothing more than written notice of expenses which plaintiff claimed pursuant to one or more provisions of the mortgage. Defendant at the trial objected to the admission of the exhibits as not competent because not the best evidence. The exhibits were admitted over defendant's objections. On this appeal defendant renews its contention that the exhibits were incompetent because not the best evidence and were, therefore, improperly admitted. Plaintiffs respond that these exhibits were business records which had been prepared under the supervision of the witnesses who

identified them at trial and were, therefore, properly admitted under Supreme Court Rule 236(a) (Ill. Rev. Stat., ch. 110A, § 236(a)).

■■ Defendant misunderstands the purpose and application of the best evidence rule. The best evidence rule applies only when the contents or terms of a writing are in issue and are, therefore, to be proved. (*Smith v. Andrews*, 54 Ill.App.2d 51, 203 N.E.2d 160, cert. den. 382 U.S. 1029, 86 S.Ct. 655; *Wallin v Greyhound Corp* (6th Cir. 1965), 341 F.2d 521; *Herzig v. Swift & Co.* (2d Cir. 1945), 146 F.2d 444; Wigmore, Evidence §§ 1177-1282 (Chadbourn ed. 1972); 32A C.J.S. *Evidence* § 782, at 100 (1964); 29 Am.Jur.2d *Evidence* § 449, at 510-11 (1967).) In the instant case the issue was not the contents of a writing but rather the amount of expenses that had been incurred by plaintiffs. The best evidence rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact might have been reduced to, or is evidenced by, a writing. 29 Am.Jur.2d *Evidence* § 449, at 510 (1967); *Herzig v. Swift & Co.*

Defendant at trial did not object to introduction of the exhibits as hearsay and does not raise that ground on this appeal. Nor could plaintiffs benefit had he raised such ground on this appeal. Grounds of objection to the admission of evidence which have not been included in the objection entered at trial cannot be considered on appeal. (*Littlefield v. Alton & Southern R.R. Co.*, 96 Ill.App.2d 470, 239 N.E.2d 147; *Plaza Express Co. v. Middle States Motor Freight, Inc.*, 40 Ill.App.2d 117, 189 NE.2d 382.) We therefore find it unnecessary to discuss plaintiffs' contention that the evidence was properly admitted under the exception to the hearsay rule provided in the business records rule, Supreme Court Rule 236.

Defendant's final contention is that the trial court erred in allowing one of plaintiffs' witnesses to testify as to an additional "estimated" administrative expense of $2000 incurred by plaintiff John Hancock Mutual Life Insurance Company. At the trial the following colloquy occurred between Miss Margaret Stapleton, investment officer with the John Hancock Life Insurance, and counsel for plaintiffs:

"Q. Miss Stapleton, I show you Plaintiffs' Exhibit F which you have identified and which has been admitted into evidence and ask you if you would like to add anything to the information contained in that exhibit?

A. Yes, I would. Listed on that exhibit are our out of pocket expenses; that is, air fare, travel expense and telephone and reproduction expenses. I would like to add to that our administrative expenses, which I estimate at approximately $2,000.00."

Defense counsel's objection of this method of proving damages was overruled.

The problem involved here is not whether Miss Stapleton could testify as to the administrative expenses incurred by the John Hancock Company, but rather whether the manner in which she testified was proper under the circumstances. No doubt Miss Stapleton, as investment officer, possessed special skill or knowledge with respect to administrative expenses of a company such as the John Hancock Company and could properly testify of those expenses (32 C.J.S. *Evidence* § 546(65), (71), (124) (1964).) However, there must be some basis in the record to justify relying upon the testimony of a witness who possesses special skill or knowledge, so that it cannot be said that the testimony is merely guess or conjecture. *Theesfeld v. Eilers*, 122 Ill.App.2d 97, 258 N.E.2d 39; *Butler v. Palm*, 36 Ill.App.2d 351, 184 NE.2d 633; *Schwartz v. Peoples Gas Light & Coke Co.*, 35 Ill.App.2d 25, 181 N.E.2d 826; 32 C.J.S. *Evidence* § 546(63), (64) (1964). The rule has been well stated as follows:

"Generally the opinion or judgment of an expert witness may and should be based on facts in evidence or presented in the record, and such facts may be personally observed by, or known to, him, or be assumed in a hypothetical question * * *.

The question whether the opinion of an expert is based on, and supported by, sufficient facts or evidence to sustain it is a question of law for the court, and it is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion. The admissibility of expert opinion evidence is dependent on the laying of a proper factual foundation; expert opinion which is so completely lacking in proper foundation that it is worthless is not admissible, and where the evidence does not disclose the existence of sufficient data on which to base a reasonable judgment, the opinion is incompetent.

Basis for the conclusion or opinion of the witness cannot be deduced or inferred from the conclusion itself, and the opinion of an expert cannot constitute proof of the existence of facts necessary to the support of the opinion * * *." 32 C.J.S. Evidence § 546(63), at 266-67 (1964).

■■ In the instant case there were no facts in the record and there was no foundation laid which could support the estimate made by Miss Stapleton. The only proof of the administrative expenses was the unsupported conclusion of the witness; the trial court had no opportunity to determine whether the sources of the estimate made by the witness

were reliable. The witness could just as easily have estimated the expenses to be $20,000 as $2000 and, if such estimate alone were held to be adequate proof, plaintiff could have recovered that amount. We do not think such an unsupported estimation of expensès is a proper proof of damages; therefore, the trial court erred in not allowing defendant's objection. Since the record shows that the decree of the trial court awarded damages for administrative expenses in the amount of $2000 to the John Hancock Company, that portion of the decree pertaining to the $2000 award is reversed. In all other respects the decree of the trial court is affirmed.

Affirmed in part and reversed in part.

EBERSPACHER and G. MORAN, JJ., concur.