LAVERNE J. KOSHMAN, Adm'rx of the Estate of Raymond C. Koshman, Deceased, *et al.*, Plaintiffs-Appellants, *v.* GLASS PITCHER, INC., Defendant-Appellee.

(No. 60586; 

First District (1st Division)—August 18, 1975.

McKenna, Storer, Rowe, White & Haskell, of Chicago (John C. Bartler and Robert S. Soderstrom, of counsel), for appellants.

Heineke & Schrader, of Chicago (Paul H. Heineke, of counsel), for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Laverne Koshman, the widow of Raymond Koshman, filed a complaint against the defendants, William Hindes and Mildred Hindes, the licensees of the Glass Pitcher, a tavern located in Franklin Park and operated by the defendant, Glass Pitcher, Inc., alleging that the defendants sold or gave intoxicating liquor to Alfred Hindes, who became intoxicated and, as a result of the intoxication, shot and killed Raymond Koshman. (Ill. Rev. Stat. 1969, ch. 43, par. 135.) William and Mildred Hindes were dismissed voluntarily, and a jury returned a verdict in favor of the defendant, Glass Pitcher, Inc.

No argument is made that the verdict is against the manifest weight of the evidence. The plaintiff contends, however, that prejudicial error occurred when the defense attorney asked improper questions during cross-examination of several witnesses.

Around noon of February 18, 1969, Alfred Hindes left the home of his daughter, Mrs. Margaret Maher, in Niles and went to the Glass Pitcher Tavern at 3248 River Road, Franklin Park. His son, the defendant William Hindes, was working there that day but the tavern was not otherwise opened for business. Alfred Hindes remained there for about two hours talking to his son. In that time William saw Alfred serve himself two steins of tap beer. He was not always in the presence of his father and there would not have been anything to prevent his father from drawing other beers or taking other liquor. Both Alfred and William Hindes left the Glass Pitcher at approximately six o'clock in the evening.

Alfred Hindes returned to the home of his daughter at about 7 o'clock that evening and stayed for about 15 or 20 minutes and had something to eat. His son-in-law was also home that evening and talked with him. Hindes had asked his son-in-law for directions to Sleepy Hollow. Both Mr. and Mrs. Maher were of the opinion that Hindes was sober although, according to Mr. Maher, "he had something to drink." Mr. Maher also testified that his father-in-law had a rather large capacity for alcohol and that he had a temper that appeared when he was drinking. Alfred Hindes then left, and Mrs. Maher expected him to return.

At about 8:45 p.m. Alfred Hindes drove his car into a gas station at Dundee where he asked the attendant, Joseph Lullie, for directions to Plum Court. Lullie characterized the man's speech as slow, deliberate and incoherent. Lullie smelled alcohol on his breath and was of the opinion that Hindes was drunk.

Hindes arrived at the home of Timothy O'Connor at 21 Plum Court, Sleepy Hollow, directly across the street from the Koshman home. Hindes said he was lost and asked O'Connor to help him. He asked for 4 Plum Court, which, O'Connor said, was a vacant lot. O'Connor then asked

whom he was looking for, and Hindes said, "Koshman.". O'Connor told him that they lived directly across the street. Hindes turned around and asked, "That house?" and O'Connor told him, "Yes." Hindes stepped off the O'Connor front porch, turned around, thanked O'Connor for his help and shook his hand. O'Connor thought he was a little bit confused but appeared normal. He testified that Hindes gave no cause for him to be alarmed.

At that time the plaintiff, her husband and three children were watching television in their home at 3 Plum Court. About 9:30 p.m., the doorbell rang and the Koshman son went to answer it. He returned to the family room to tell his father that there was someone there to see him. His father got up from the couch and went to the front door hallway, from which the plaintiff heard a low murmur of voices. Within what seemed "like a minute," there were two gunshots. The plaintiff ran to the front hallway where she found her husband lying in a pool of blood. She told her children to call the police; and she attempted to block Hindes from leaving, but he was able to drive his car around hers and escape. She managed to get his license number. She testified that when she first saw him sitting in the car, he was staring at her and that later he was driving slowly and aimlessly.

Illinois State Policeman Jack Ericson, pursuant to a dispatch he received regarding the shooting, stopped the car driven by Alfred Hindes. Hindes got out with a .38-caliber revolver in his hand and then shot himself. He was taken by ambulance to the emergency room of Geneva Community Hospital. Blood samples taken from him were found to contain .19% alcohol. Dr. Milton Ostroff testified that a person with that blood alcohol reading "would be very drunk" and that the person's "thought processes would be diminished tremendously."

Both Hindes and Koshman died as a result of the bullet wounds; and it was stipulated that the bullets taken from Koshman's body were fired from the gun recovered from Hindes. No motive was established for the killing. Koshman owned 49% of the stock in the Glass Pitcher Corporation.

Joseph Lullie testified on direct examination that in his opinion Alfred Hindes was drunk shortly before the death of Raymond Koshman. On cross-examination he was questioned about his failure to mention the alleged intoxication of Hindes in a statement which he made to the Sleepy Hollow Police Chief two days after the shooting. The plaintiff contends that this cross-examination constituted reversible error.

■■ The court sustained objections to all the questions by which the defendant sought to show that in his statement to the Police Chief the witness did not say that Hindes was intoxicated. In our view the

questions were proper. "If a former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent." (McCormick On Evidence § 34 at 68 (2d ed. 1972); see also *Esderts v. Chicago, Rock Island & Pacific R.R. Co.,* 76 Ill.App.2d 210, 222 N.E.2d 117.) The plaintiff, in her reply brief, concedes the propriety of the questions but urges that the repeated questions on a subject previously ruled improper was prejudicial. There is no merit to this argument; and we note nothing improper in the manner in which the defense attorney attempted to convince the court that he should be permitted to ask the questions.

During the cross-examination of Mrs. Koshman the following occurred:

> "Q. Now, after this occurred did you give a statement to the police?
>
> A. Yes, I did.
>
> Q. Did you also testify at the coroner's inquest?
>
> A. Yes, I did.
>
> Q. At any of those times did you ever tell the police that Mr. Hindes, Sr. was intoxicated?
>
> Plaintiff's Attorney: I object to that.
>
> The Court: Objection sustained."

██ The plaintiff now contends that prejudicial error occurred when the defendant failed to introduce evidence that the witness had told the coroner's jury or the police that Hindes was or was not intoxicated. The cases cited by the plaintiff involve the long-recognized rule that it is prejudicial to lay a foundation for impeachment on a material point and then fail to offer proof of the allegedly impeaching statements. (*Rigor v. Howard Liquors, Inc.,* 10 Ill.App.3d 1004, 295 N.E.2d 491; *Schoolfield v. Witkowski,* 54 Ill.App.2d 111, 203 N.E.2d 460.) The rule has no application here and no reversible error arose because the defendant could not be required to offer proof of an impeaching statement when it was precluded from laying a foundation for the impeachment.

██ Paula Cardosi, a chemist with the instrument laboratory of the State Bureau of Identification, conducted the chemical analysis of the blood sample taken from Hindes. On re-cross-examination of the witness, she was asked what effect prior alcohol in the test tubes might have had on the blood alcohol test results of the analysis of Hindes. During the cross-examination of Lawrence Sabatino, the Police Chief of Sleepy Hollow, and James E. Barnes, a detective with the Illinois State Police, the defense sought to establish that there were other drinking establishments or liquor stores on the route taken by the deceased following the shooting and along the route from the Maher residence in Niles to the plain-

tiff's residence in Sleepy Hollow. The cross-examination of all three witnesses is now assigned as error. However, no objection was made to the questions now complained of; consequently, any error is waived. (*People v. Zemola*, 9 Ill.App.3d 424, 430-431, 292 N.E.2d 195.) Further, under the state of the record at the time Miss Cardosi testified and under the defendant's theory that the deceased must have acquired or consumed intoxicants somewhere other than the Glass Pitcher, the cross-examination of the three witnesses was not improper.

Last, the plaintiff contends that the court erred in permitting the defendant to cross-examine Chief Sabatino about liquor bottles found in Hindes' car. On direct examination the following occurred:

"Q. When you searched the car, Chief, did you find anything other than the letters?

A. Yes, we found two empty—one was a half-pint and one was a pint bottle of Early Times. One was empty underneath the right-hand front seat of the car, and the other was about three-quarters full.

Q. One was three-quarters full, and the other one was empty?

A. Yes.

Q. Which was it?

A. The half-pint was under the seat, and the pint was on top—

Q. When you say the half-pint was underneath the seat, was it in anything?

A. Both bottles were in paper bags. One bottle was in a bag underneath the right-hand front seat, and the other one was on top of the seat exposed.

Q. Were you the one that found the bottle underneath the seat?

A. Trooper Barnes did.

Q. You saw where he brought it out from?

A. Yes, sir."

The defendant now contends that by bringing the evidence of the bottles out on direct examination the plaintiff has waived her right to object to the subsequent questioning of the defendant. The plaintiff counters that before Sabatino testified, her attorney asked for an *in limine* conference and at that time objected to any questions about liquor bottles found in the car.

■■ The basis of his objection in this court is that it was error to permit evidence of the bottles in the absence of any direct proof that Hindes drank from them "on the evening in question" without limitation as to time. In the trial court his objection was equivocal, but the gist of it was that he anticipated that the defense would later object to the blood analysis (Miss Cardosi had not yet testified) on the ground that Hindes

might have consumed the liquor *after* the shooting. When asked if the defendant did not have the right to introduce that testimony, the plaintiff's attorney answered as follows:

"Unless he would connect it up and say he drank it *before* or conversely I think he might have the right to introduce that testimony, but if he does, I don't think he would have a right to object to the blood alcohol. In other words, what I am saying, he can't have it both ways. He can't say there were other bottles of liquor in the car and he may have drank that after the shooting, so therefore the blood alcohol may reflect something that happened after the accident rather than prior to the accident.

If that is going to be his position, I think that under the circumstances he shouldn't be allowed to introduce the bottles of alcohol unless he can tie up the fact they were in fact consumed *afterwards* because otherwise they don't have any probative value.

The Court: Wouldn't that all be related to the issue involved in this case? Wouldn't it be a circumstance that the defendant can argue before the jury raising the inference or the possibility that the assailant had consumed liquor either prior to the shooting or after the shooting?

By the same token, you can raise the same inference that the bottles were there and there is no evidence whatsoever to establish with any degree of certainty that any liquor had been consumed by the assailant.

&ast; &ast; &ast;

Defense Attorney: Your Honor, as I say, my position is one of two ways. It's my position that he can't have it both ways. If the evidence is introducible without showing that the man did in fact consume it after and/or before, or at any time, any specific time, then I would suppose there is none because the man is obviously dead now. That's my particular problem in this case.

I just think that maybe I am being anticipatory, but as I recall, counsel's objection to the possible admission of the blood alcohol test was that he could have consumed the alcohol after the shooting, and if that only goes to the weight—and I think it probably should—if that only goes to the weight, then I have no objection to the bottles being introduced.

The Court: I think your argument is somewhat anticipatory because as yet you haven't sought to introduce the testimony relating to the conclusions of the blood alcohol test. You can't preclude counsel from making his objection at this point in time. If and when you introduce the result of that blood test he certainly

. has a legal right to .object to it." (Emphasis added.)
The objection in the trial court may be construed as being conditioned on what position the defense might take in the future, and the trial court properly ruled that the objection was premature. In any event, the plaintiff did not specify that the evidence was inadmissible in the absence of any direct proof that Hindes drank from the bottles. The objection now made on that ground, therefore, has not been preserved for review. *Littlefield v. Alton & Southern R.R.*, 96 Ill.App.2d 470, 478-479, 239 N.E. 2d 147.

■■ Moreover, we believe the evidence was properly admitted. The defense contended that Hindes was not intoxicated at the time of the killing; or, alternatively, if he was intoxicated at the time of the killing, it was not as a result of drinking intoxicating liquor at the Glass Pitcher. The defense testimony, if believed, established that the Glass Pitcher did not sell pint or half-pint bottles of liquor; and that Hindes had consumed by 6 p.m. two 10-ounce steins of beer at the Glass Pitcher. Dr. Ostroff, the plaintiff's witness, testified that the alcohol in two 10-ounce steins of beer would have been dispelled from Hindes' body within an hour. The killing occurred at 9:30 p.m., three and one-half hours after Hindes left the Glass Pitcher. Dr. Ostroff also testified that if a person ingested, during a short period of time, a half-pint plus several additional ounces of whiskey (the bottles in question were an empty half-pint and a full pint less two or three ounces), his blood alcohol reading would be .19%, which was the same reading as Hindes' when his blood sample was taken one and one-half hours after the shooting. There was no disputing that at the time Hindes' blood sample was taken he was intoxicated. The defense had the right to establish that he came to that condition as a result of drinking intoxicating liquors not acquired at the Glass Pitcher. A plaintiff in a dram shop action may prove his case by circumstantial evidence (*Hocker v. O'Klock*, 16 Ill.2d 414, 158 N.E.2d 7); so also may a defendant; and the bottles constituted circumstantial evidence supporting the defendant's theory.

The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and SIMON, JJ., concur.